# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CHS CAPITAL, LLC

    Plaintiff,

v

BOERSEN FARMS AG, LLC, a Michigan limited liability company, BOERSEN FARMS GRAIN, a Michigan co-partnership, BOERSEN FARMS, INC. a Michigan corporation, BOERSEN FARMS PROPERTIES, LLC, a Michigan limited liability company, ARLAN BOERSEN FARM, LLC, a Michigan limited liability company, ARLAN DENNIS FARM, LLC, a Michigan limited liability company, ARLAN ROSS FARM, LLC, a Michigan limited liability company, DENNIS BOERSEN FARM, LLC, a Michigan limited liability company, ROSS BOERSEN FARM, LLC, a Michigan limited liability company, ROSS RUSSELL FARM, LLC, a Michigan limited liability company, DENNIS RUSSELL FARM, LLC, a Michigan limited liability company, BOERSEN AG PARTNERS, LLC, a Michigan limited liability company, BOERSEN LAND CO., LLC, a Michigan limited liability company, DENNIS BOERSEN, STACY BOERSEN, ARLAN BOERSEN, SANDRA BOERSEN, SANDRA BOERSEN TRUST, ROSS BOERSEN, BOERSEN FARMS & AFFILIATES, LLC, a Michigan limited liability company, BOERSEN TRANSPORT, INC., a Michigan corporation,

    Defendants.
_____/

Case No. 1:17-cv-00769

Honorable

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR APPOINTMENT OF RECEIVER WITH CONSENT**

{02214738 4 }

Ross A. Leisman (P41923)
Mika Meyers, PLC
Attorneys for Plaintiff
900 Monroe Avenue NW
Grand Rapids, MI 49503
(616) 632-8000

_____/

Plaintiff CHS Capital, LLC ("CHS Capital"), through its attorneys Mika Meyers PLC, submits the following Brief in support of its Motion for Appointment of Receiver With Consent.

## STATEMENT OF FACTS

The facts relevant to the appointment of a receiver are alleged in CHS Capital's Verified Complaint and Verified Motion for Appointment of Receiver With Consent. To summarize, (1) the Defendants consent to the appointment of a receiver pursuant to the Consent and Order attached as Exhibit A to Plaintiff's Verified Motion for Appointment of Receiver With Consent; (2) the Defendants are out of money and have no operating capital to harvest 58,000 acres of soybeans and 25,000 acres of corn; (3) the Defendants have engaged in various fraudulent and out-of-the-ordinary course transactions specifically designed by the Defendants to cause the purchasers of over $4,700,000 worth of corn and soybeans to remit the sale proceeds to the Defendants – not CHS Capital – and the Defendants wrongfully failed to remit the sale proceeds to CHS Capital; and (4) the Defendants fraudulently misrepresented the financial viability of 2017 farming operations by fraudulently and intentionally misrepresenting to CHS Capital the quantity of harvested 2016 grain available for sale, which quantity and expected sale proceeds were included in a budget that intentionally and fraudulently overstated 2016 grain inventory by over $6 million to create the illusion of sufficient revenue to offset expenses.

## LAW AND ARGUMENT

A. <u>This Court has the authority to appoint a receiver to preserve and protect CHS Capital's crop collateral and its proceeds.</u>

Rule 66 of the Federal Rules of Civil Procedure authorizes the appointment of a receiver if a person with an interest in the property provides sufficient justification. Fed. R. Civ. P. 66; *Santibanez v Wier McMahon & Co.*, 105 F.3d 234, 241 (5th Circ. 1997). The "district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court." *Liberte Capital Grp., LLC v Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). "[T]he form and quantum of evidence required on a motion requesting the appointment of a receiver is a matter of judicial discretion." *Santibanez*, 105 F.3d at 241 (quoting 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2983 (1973)).

District Courts have considered a number of factors when determining whether to exercise their discretion to appoint a receiver, including (1) the adequacy of the security; (2) the financial position of the borrower; (3) any fraudulent conduct on the defendant's part; (4) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (5) inadequacy of legal remedies; (6) the probability that harm to the plaintiff by denial of appointment would outweigh injury to parties opposing appointment; (7) the plaintiff's probable successes in the action and the possibility of irreparable injury to the plaintiff's interest in the property; and (8) whether the plaintiff's interests sought to be protected will in fact be well-served by a receivership. *PNC Bank NA v Goyette Mechanical Company, Inc.*, 15 F.Supp3d 754, 758 (E.D. Mich. Dist. Ct. 2014), <u>citing</u> *Fed. Nat. Mortgage Ass'n v Mapletree Investors Ltd. P'ship*, 10-CV-10381, 2010 WL 1753112, at *3 (E.D. Mich. Apr. 30, 2010) (citations omitted).

Courts have found "the adequacy of the security and the financial position of the borrower to be the most important" factors in evaluating whether to appoint a receiver. *PNC Bank, Id.* at 758-59,

citing *Fed. Nat. Mortgage Ass'n v Mapletree Investors Ltd. P'ship*, 10-CV-10381, 2010 WL 1753112, at *3 (E.D. Mich. Apr. 30, 2010) (citing *New York Life. *759 Ins. Co. v Watt West Inv. Corp.*, 755 F. Supp. 287, 292 (E.D. Cal. 1991)).

The primary purpose of a receiver is to preserve property and dispose of it under court order. *Weathervane Window Inc. v White Lake Construction Co.*, 192 Mich App 316, 321-22 (1991). "A receiver may be appointed where necessary to protect property against imminent danger or loss." *Id* at 322. See, also, *Cohen v Cohen,* 125 Mich App 206, 214 (1983). See also 65 Am Jur 2d, *Receivers* §27 ("the necessity for conservation, preservation, protection and administration of property pending action, justifies the appointment of receiver").

A debtor's failure to meet its financial obligations also justifies the appointment of a receiver. "[A] party's past unimpressive performance may justify the trial court in appointing a receiver." *Reed v Reed,* 265 Mich App 131, 161 (2005); *Francis Martin Inc. v Lomas,* 62 Mich App 706, 710-711 (1975) ("Appellant's past performance in this matter was unimpressive. It had defaulted on a promissory note given to the bank. Various mechanic's liens were permitted to be attached to the building. The court did not abuse its discretion in ordering the receivership because of appellant's prior failure to meet its financial obligations.)

B.     CHS Capital's crop collateral is inadequate to fully secure the Defendants' obligations.

As noted in CHS Capital's Verified Complaint and its Verified Motion for Appointment of a Receiver, the current outstanding balance owed CHS Capital is in excess of $145,327,000. The balance outstanding by far and away exceeds the approximate $50 million value of the crops. There is no genuine issue that CHS Capital is undersecured, and its security inadequate.

4

{02214738 3 }

C.  <u>The Borrowers lacks sufficient funds to pay for the fall harvest of soybeans and corn and a receiver must be appointed to protect and harvest the crops, all CHS Capital's collateral.</u>

The primary reason for CHS Capital requesting the appointment of a receiver is that the Defendants do not have the funds or projected crop proceeds to harvest the 2017 crops. The Affidavit of Mark Briden filed in support of CHS Capital's motion provides the financial detail to confirm that the Defendants will run out of money by the end of August, and will have no money to pay for the harvest of soybeans in September.

CHS Capital entered into the May 3, 2017 Forbearance Agreement to give the Defendants a period of time to find another lender that would pay off the Defendants' obligations owed to CHS Capital. When the Defendants breached the Forbearance Agreement shortly after its execution, CHS Capital provided the Defendants with a formal June 6, 2017 notice of default, but elected to simply reserve its rights and not terminate the forbearance. CHS Capital continued to work with the Defendants, giving them additional time to secure alternative financing and demonstrate the financial ability to harvest the 2017 crops.

It is now obvious that the Defendants lack the necessary funds to harvest the crops. Moreover, the Defendants failed to secure alternative financing over the course of the summer and have no commitment letters from other lenders to provide financing for next month's soybean harvest. Absent a written lending commitment "in hand," it is a certainty that the Defendants will not have any loan proceeds from a third party lender to pay the expenses of the September soybean harvest, or the October corn harvest. CHS Capital is unwilling to extend additional credit to the Defendants, but is willing to extend credit to a receiver.

{02214738 3 }

D. The <u>Defendants have engaged in substantial fraudulent conduct attempting to sell crops in circumvention of the Food Security Act</u>.

The transactions described in Paragraph 48-50 of the Complaint and Paragraph 22-24 of the Verified Motion for Appointment of Receiver With Consent all had one purpose: to sell out of the ordinary course to buyers who had not received a Food Security Act notice from CHS Capital, with such buyers then remitting the sale proceeds to the Defendants and not CHS Capital. The Defendants received the sale proceeds and wrongfully failed to remit such sale proceeds to CHS Capital.

Under the terms of the loan documents, the Defendants were required and did provide CHS Capital with a list of ordinary course of business buyers. CHS Capital provided Food Security Act notices to those buyers, thereby obligating those buyers by statute to remit sale proceeds to CHS Capital. The Defendants purposefully circumvented the loan documents and Food Security Act by selling to buyers well outside of the Defendants' geographic region of historical sales and to buyers not engaged in the ordinary course of buying farm products from all grain sellers. The explicit purpose and intent of engaging in these transactions was to sell to buyers not identified by the Defendants as their buyers, and buyers not known to be in the business of buying grain from grain sellers, such that the Defendants would receive the sale proceeds and wrongfully use such proceeds.

E. <u>Based on the Defendants' prior actions, there is an imminent danger of CHS Capital's crop collateral being diminished in value by further sales outside of the ordinary course of business</u>.

CHS Capital has terminated the Forbearance Agreement. As a result of such termination, all proceeds of grain sales in the ordinary course will or should be remitted to CHS Capital, to be applied against the indebtedness. CHS Capital has no obligation to permit the Defendants to use the proceeds to pay the expenses of the Defendants' farming operations. As a consequence, the Defendants have no money, and there is an imminent danger that Defendants will again sell grain

collateral out of the ordinary course, to buyers not receiving the Food Security Act notice from CHS Capital, and consuming or squandering the sale proceeds thereof.

This risk relates to both the remaining 2016 crop in storage and, more importantly, any 2017 crop that the Defendants attempt to harvest by promising to pay fuel suppliers, equipment lenders, and laborers following the harvest. The Defendants can pay such expenses only with crop proceeds that constitute CHS Capital's collateral. They have no other source of payment. Thus, there is an imminent danger of the highest probability of more out of the ordinary course sales of grain.

F.     CHS Capital lacks adequate legal remedies to protect its crop collateral from judgment lien creditors.

As described in Paragraph 57 of the Complaint, and Paragraph 31 of the Verified Motion for Appointment of Receiver With Consent, numerous judgment creditors had served writs of garnishment on those parties buying the Defendants' farm products in the ordinary course of their business. As a result, the purchasers of such farm products are faced with the quandary of either remitting pursuant to the writ of garnishment and facing CHS Capital's claim of entitlement, or remitting to CHS Capital and face double exposure for non-compliance with the writ of garnishment. At the very least, CHS Capital would be required to intervene in each of those proceedings to protect its priority as a secured creditor. Such a legal remedy is inadequate and unjustified. A receivership will protect CHS Capital's collateral from such actions by unsecured judgment creditors.

G.     The probability of harm to CHS Capital by denial of the appointment of a receiver would outweigh injuries to the Defendants.

The Defendants' past actions illustrate the extent of creativity employed by them to circumvent the Food Security Act and deprive CHS Capital of the proceeds of its collateral. Because CHS Capital is substantially undersecured, it has no equity cushion to mitigate the harm it will suffer should the Defendants, lacking operating funds but in possession and control of the Defendants'

grain subject to the CHS Capital lien, find new ways to sell to buyers not receiving a Food Security Act notice from CHS Capital. CHS Capital will most certainly be harmed by any transaction that results in grain being sold and the sale proceeds not being remitted to CHS Capital.

By contrast, the harm to the Defendants arising from the appointment of a receiver is not material. The receivership that CHS Capital requests will only relate to the Defendants' farming operations, not their personal affairs. Further, there is no genuine issue that CHS Capital is entitled to possession of its collateral as a result of the Defendants' admissions of default in the Forbearance Agreement and the clear language of the security agreements. Since CHS Capital is entitled to possession of the crops, there is no relative "harm" to the Defendants if a receiver is appointed to harvest the crops.

H.  **The probability of success on CHS Capital's action and the possibility of irreparable injury to CHS Capital's interest in its cash collateral are both high.**

There is no genuine issue of fact that CHS Capital is entitled to possession of its grain collateral. The Defendants have admitted their breach of the various loan agreements in the Forbearance Agreements, and the list of events of default justifying termination of forbearance is long. Simply put, CHS Capital is entitled to recovery of its collateral.

Further, there is no genuine issue of fact that the Defendants will be out of money at the end of August, and will not have any money to pay for the harvest of the soybeans in September and corn thereafter. If the Defendants lack the operating funds to harvest the crops, there is a real possibility that the crops will be damaged or destroyed, irreparably harming CHS Capital. The risk of no harvest is a real one, with tremendous economic consequences to CHS Capital's collateral.

Finally, the Defendants' prior conduct is the best evidence that CHS Capital will be irreparably harmed if a receiver is not appointed. The Defendants will find a buyer for the grain outside of the ordinary course of business, because the Defendants cannot harvest the 2017 crop

without doing so, receiving the sale proceeds, and using those proceeds to pay the expenses of harvest.

I. <u>Timing is critical. A receiver must be appointed now to harvest the soybean crops in September, and corn crop in October.</u>

The need for a receiver is immediate. Starting in September, 58,000 acres, i.e., over 90 square miles, of soybeans must be harvested. The receiver must determine the equipment needed to harvest the soybeans, make the necessary arrangements with equipment suppliers to take delivery of such equipment, and determine where to store the crop. The receiver must hire Defendants' employees or other others to perform the harvest. For 90 square miles of soybeans, this is no small task, requiring substantial lead time.

25,000 acres of corn, i.e., over 39 square miles, must be harvested in October and November. The same logistics are required.

There is no dispute that the Defendants have no money to perform the harvest. If a receiver is to successfully harvest the crops, the receiver must be appointed immediately.

J. <u>CHS Capital's interests in its farm product collateral will be well served by a receivership</u>.

A receiver will honor CHS Capital's interest as a properly perfected, first priority secured creditor in the farm products of the Defendants. CHS Capital will not be at risk with respect to the receiver's disposition of collateral, nor will the receiver "pay" unsecured creditors with CHS Capital's collateral. Further, a receivership would ensure that the crops are cultivated and harvested in a manner that protects CHS Capital's interests and the interests of all creditors. As noted above, CHS Capital is substantially undersecured in this case and must realize the maximum value of the 2017 crops, to apply against the indebtedness.

In this case, for the reasons set forth above, the appointment of a receiver is necessary to preserve CHS Capital's collateral and is in the interests of all stakeholders.

9

{02214738 3 }

Further, the Collateral is encumbered by junior liens. A receiver may be empowered to sell the property free and clear of liens, with liens attaching to the sale proceeds in the same rank and priority as attached to the property. See *Stock Building Supply, LLC v Crosswinds Communities, Inc.*, 317 Mich App 189 (2016).

## REQUEST FOR RELIEF

For all the reasons set forth above, appointment of a receiver is necessary and appropriate for the purpose of storing and selling crops in storage, and harvesting, storing, and selling crops in the field, all for the benefit of creditors, including the use of the sale proceeds of the property to apply to the amount of the indebtedness to CHS Capital, with any surplus to any junior secured creditors.

Moreover, the Defendants consent to the appointment of O'Keefe & Associates Consulting, L.L.C. as receiver over the Defendants' crops, livestock, farming equipment, and real property subject to CHS Capital's security interest.

CHS Capital therefore requests that this Court appoint O'Keefe & Associates Consulting, L.L.C. as receiver and grant such authority as this Court shall deem appropriate for the purpose of preserving and disposing of such assets for the benefit of creditors, including the use of the sale proceeds to apply to the amount of the indebtedness to CHS Capital, with any surplus to any creditors, and that the Court grant such other relief as is just and appropriate.

Respectfully submitted,

MIKA MEYERS PLC
Attorneys for Plaintiff

Dated: August 23, 2017

By: /s/ Ross A. Leisman
Ross A. Leisman (P41923)
900 Monroe Avenue, NW
Grand Rapids, MI 49503
(616) 632-8000

{02214738 3 }