UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHS CAPITAL, LLC,

      Plaintiff,

                                                                    Honorable Robert J. Jonker

v.                                                                Case No.:  1:17-cv-00769

BOERSEN FARMS AG, LLC, ET AL.,

      Defendants.
_____/

### RESPONSE TO MOTION TO APPOINT A RECEIVER

      **NOW COME** Boersen Farms AG, LLC, Boersen Farms Grain, Boersen Farms, Inc., Boersen Farms Properties, LLC, Boersen AG Partners, LLC, Boersen Land Co., LLC, Boersen Farms & Affiliates, LLC, and Boersen Transport, Inc. (the "Boersen Farming Entities") and for their Response to Motion to Appoint a Receiver ("Response") hereby state as follows:

### INTIAL STATEMENT RECONFIRMING CONSENT

      1.      The Boersen Farming Entities entered into the Forbearance Agreement on May 3, 2017 referenced in CHS' Motion for Appointment of Receiver ("Forbearance Agreement"), which was attached to the pleadings filed by the Plaintiff in this cause.

      2.      As part of the Forbearance Agreement, CHS agreed to fund farming operations based upon a budget that was attached thereto, which provided for payment of other necessary secured creditors, unsecured payables, employees and the many landlords leasing land to your Defendants.

      3.      CHS originally sent a notice of default to the Boersen Farming Entities on or about June 6, 2017, citing various defaults under the Forbearance Agreement, including many of the

same defaults that were recited in its later notice of default, dated August 14, 2017 but received on August 15, 2017.

4. As of August 15, 2017, CHS declared that the Boersen Farming Entities were no longer permitted to spend <u>any</u> cash and directed it to pay no further expenses.

5. The Boersen Farming Entities consented to the appointment of a receiver in this matter as CHS Capital, LLC had ceased funding and declined to fund operational expenses, including payroll, unless the Boersen Farming Entities consented in the manner and fashion exactly prescribed in the consents filed with this Honorable Court. The Boersen Farming Entities consented, not having enough cash reserves to make payroll.

6. As part of the consent process, the Boersen Farming Entitles reviewed the proposed receivership order and two key components of the order were critical to their consent as opposed to attempting to file Chapter 11 proceedings.

7. The first provision was that secured PMSI creditors could obtain their collateral, as the Boersen Farming Entities had previously this summer made agreements with those creditors that called for the return of their equipment if certain payments were not made. The Boersen Farming Entitles believed these agreements should be honored as the crop would not have been planted or maintained absent the use of equipment from the likes of First Farmers Bank & Trust, John Deere and CNH.

8. The second provision was that there would be a stay to litigation, as several lawsuits were brought against the Boersen Farming Entities and if a receiver was in place without a stay there would be no way to defend such actions.

9. The Boersen Farming Entities understand this Court's concerns regarding the stay effecting non-parties and until the complaint was filed were not aware that major secured creditors would not be named.

10. The Boersen Farming Entities continue to consent to the appointment of a receiver in this cause. By consent of the Boersen Farming Entities, the proposed receiver has been actively involved and is more than capable of performing the task given to it, assuming it is properly funded.

11. However, given the court's reluctance to grant the broad stay language in the proposed receivership order, the Boersen Farming Entities would request that the prohibition in the proposed Order restricting their ability to file bankruptcy be stricken. (Courts have universally held such provisions void as against public policy. *See generally, Merrit v. Mr. Forrest Fur Farms*, 103 F.2d 59 (6th Cir. 1939) (holding that such provisions violate a parties constitutional right to file bankruptcy), *Continental Insurance Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011, 1026 (9th Cir. 2012) ("We have held that '[i]t is against public policy for a debtor to waive the prepetition protection of the Bankruptcy Code.') (quoting *Bank of China v. Huang (In re Huang)*, 275 F.3d 1173, 1177 (9th Cir. 2002)); *In re Tru Block Concrete Prods. Inc.*, 27 B.R. 486, 492 (Bankr. S.D. Cal. 1983) ("It is a well-settled principal that an advance agreement to waive the benefits conferred by the bankruptcy laws is wholly void as against public policy"); *see also, In re Wank*, 505 B.R. 878, 888 (B.A.P. 9th Cir. 2014) (collecting cases); *Hayhoe v. Cole (In re Cole)*, 226 B.R. 647, 651-52 & n. 7 (B.A.P. 9th Cir. 1998).

12. Similarly, the receiver, must fund the defense of actions which are not stayed by this Court.

13. The Boersen Farming Entities renew their consent to the appointment of a receiver in this cause, which receiver is actively engaged and prepared to fulfill its duties, but seek modification of the proposed order, to preserve their rights to file for relief under Title 11 of the United States Code and provide for funding to defend actions brought by parties not stayed by this Court's order.

### RESPONSE TO GENERAL ALLEGATIONS

14. The Boersen Farming Entities generally agree with the accuracy of the allegations set forth in CHS's Motion but would disagree with the characterization of the defaults and the value of the crop, which the Debtors believe to have a significantly higher value.

15. The Boersen Farming Entities admit that there was a default under the Forbearance Agreement. However, the Budget was the join work product of CHS, and the Boersen Farming Entities.

### RESPONSE TO 2016 QUANTITY, WORKING CAPITAL FOR 2017 HARVEST & GRAIN SALES

16. The Boersen Farming Entities deny any false misrepresentations with respect to the 2016 inventory.

17. It was known at the time of executing the Forbearance Agreement that there would be a cash short fall and it was agreed that the Boersen Farming Entities could sell a portion of the 2017 grain proceeds to funds its operations. In fact, the budget relied upon the same to get to harvest.

18. The Boersen Farming Entities was prepared to arrange for a third party to purchase a portion of the 2017 crop prior to harvest in order to fund operations between late August and the first of October. This request was denied by CHS.

19. The grain sales which were allegedly sold in violation cannot be the basis for a receiver as they occurred prior to the Forbearance Agreement. Further, substantially all of the proceeds were used to fund the farming operation including the planting of and maintain the crop which is the subject of this proposed receivership.

### RESPONSE TO ACTIONS OF OTHER CREDITORS & LACK OF EQUITY

20. The Boersen Farming Entities are required pursuant to an order from the United States District of Utah to remove and deliver collateral to Tetra. The Boersen Farming Entities requested that the proposed receivership order require the receiver to comply with that Order. Such request was denied. However, Boersen Farming Entities believe it remains the responsibility of the receivership to comply with the order from the United States District of Utah.

21. The Boersen Farming Entities would agree that there is no equity above the liens of CHS, but believe it is appropriate that all parties with an interest in the receivership property (including but not limited to all secured creditors and landlords) be notified by CHS of these proceedings.

22. With respect to the choice of receiver, the Boersen Farming Entities have no objection to the appointment of the receiver as it has been engaged and appears ready to proceed and preserve the value of the Boersen Farming Entities.

### RESPONSE TO COURT'S ORDERS REGARDING DIVERSITY

23. The Court has raised the issue of its jurisdiction to hear this matter, which is based solely on diversity. The Boersen Farming Entities would confirm that each is incorporated in Michigan and each has its principal place of business in Michigan. As such there is diversity between the Boersen Farming Entities and CHS.

24. However, as the Court points out there could be other parties which would seek to join this cause of action, or may be necessary parties which would destroy diversity. The Court's assumption that there must be some Michigan creditors is correct. Below is a summary of the significant creditors that, upon information, are domiciled in Michigan:

- A. It is believed that a minimum of 300 landlords (mostly farmers) whom the Boersen Farming Entities rent from and clearly have claims against the Boersen Farming Entities and against the receivership property.

- B. The Boersen Farming Entities owe no less than 15 local municipalities for unpaid property taxes, which may have claims against the receivership property

- C. There are no fewer than 80 employees which may have claims against the Boersen Farming Entities.

- D. More than a dozen creditors owed more than $100,000.00 are believed to be Michigan entities.

- E. The Boersen Farming Entities have land contracts with at least three parties who, upon information, are domiciled in Michigan. Approximately $9 Million or more is owed on these land contracts.

**WHEREFORE** the Boersen Farming Entities pray for relief consistent with this Response and for such other relief as the court finds just and appropriate and reaffirm their consent for the appointment of a receiver (without further delay) under such terms and conditions as this court deems appropriate to protect the interest of all including the its own jurisdictional requirements.

Respectfully submitted,

**RAYMAN & KNIGHT**
Attorneys for Boersen Farming Entities

Dated: September 7, 2017         By: _____/s/_____
                                      Cody H. Knight (P64811)

BUSINESS ADDRESS:
141 East Michigan Avenue, Suite 301
Kalamazoo, MI  49007
Telephone: (269) 345-5156