UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHS CAPITAL, LLC

    Plaintiff,

v

BOERSEN FARMS AG, LLC, a Michigan limited liability company, BOERSEN FARMS GRAIN, a Michigan co-partnership, BOERSEN FARMS, INC. a Michigan corporation, BOERSEN FARMS PROPERTIES, LLC, a Michigan limited liability company, ARLAN BOERSEN FARM, LLC, a Michigan limited liability company, ARLAN DENNIS FARM, LLC, a Michigan limited liability company, ARLAN ROSS FARM, LLC, a Michigan limited liability company, DENNIS BOERSEN FARM, LLC, a Michigan limited liability company, ROSS BOERSEN FARM, LLC, a Michigan limited liability company, ROSS RUSSELL FARM, LLC, a Michigan limited liability company, DENNIS RUSSELL FARM, LLC, a Michigan limited liability company, BOERSEN AG PARTNERS, LLC, a Michigan limited liability company, BOERSEN LAND CO., LLC, a Michigan limited liability company, DENNIS BOERSEN, STACY BOERSEN, ARLAN BOERSEN, SANDRA BOERSEN, SANDRA BOERSEN TRUST, ROSS BOERSEN, BOERSEN FARMS & AFFILIATES, LLC, a Michigan limited liability company, BOERSEN TRANSPORT, INC., a Michigan corporation,

    Defendants.

                                                     /

Case No. 1:17-cv-769

Honorable Robert J. Jonker

**FIRST AMENDED VERIFIED COMPLAINT FOR CLAIM AND DELIVERY, APPOINTMENT OF RECEIVER AND MONEY JUDGMENT**

{02212259 8 }

Ross A. Leisman (P41923)
Mika Meyers, PLC
Attorneys for Plaintiff
900 Monroe Avenue NW
Grand Rapids, MI 49503
(616) 632-8000

William Kent Carter
Gordon & Rees, LLP
Attorneys for CNH Industrial Capital America, LLC
One N. Franklin, Suite 800
Chicago, IL 60606
(312) 565-1400
Kentcarter@grsm.com

Cody H. Knight (P64811)
Rayman & Knight
Attorneys for Boersen AG Partners, LLC, Boersen Farms & Affiliates, LLC, Boersen Farms AG, LLC, Boersen Farms Grain, Boersen Farms Properties, LLC, Boersen Farms, Inc., Boersen Land Co., LLC, and Boersen Transport, Inc.
141 E. Michigan Avenue, Suite 301
Kalamazoo, MI 49007
(269) 345-5156
chk@raymanknight.com

Joseph Michael Ammar (P41972)
Plunkett Cooney
Attorneys for Intervenor-Defendant First Farmers Bank & Trust
950 Trade Centre Way, Suite 310
Portage, MI 49002
(269) 226-8845
jammar@plunkettcooney.com

Charles A. Lawler (P65164)
Brian P. Lick (P71577)
Clark Hill PLC
Attorneys for BF Funding, LLC
212 E. Grand River Avenue
Lansing, MI 48906
(517) 318-3100
clawler@clarkhill.com
blick@clarkhill.com

Brian P. Lick (P71577)
Clark Hill PLC
Attorney for Hitachi Capital America Corp.
212 E. Grand River Avenue

2

{02212259 8 }

Lansing, MI 48906
(517) 318-3100
blick@clarkhill.com

Ronald J. Vander Veen (P33067)
Cunningham Dalman P.C.
Attorneys for Dennis Boersen
321 Settlers Road
P.O. Box 1767
Holland, MI 49422
(616) 392-1821
rjvv@holland-law.com
_____/

Plaintiff, CHS Capital, LLC ("CHS Capital"), by and through its attorneys, Mika Meyers PLC, and pursuant to Fed.R.Civ.P. 15(a)(1)(A), states its First Amended Verified Complaint against Defendants as follows.

## PARTIES

1. CHS Capital is a Minnesota limited liability company, with its principal place of business located at 5500 Cenex Drive, Inver Grove Heights, MN 55077. CHS Capital's sole member is CHS Inc. CHS Inc. is incorporated as a Minnesota cooperative with its principal place of business located at 5500 Cenex Drive, Inver Grove Heights, MN 55077.

2. Boersen Farms AG, LLC is a Michigan limited liability company, with its principal place of business located at 6241 Ransom Street, Zeeland, MI 49464. The members of Boersen Farms AG, LLC are Dennis Boersen, Ross Boersen, Sandra Boersen, and Arlan Boersen, all citizens of the State of Michigan and domiciled in Michigan.

3. Boersen Farms Grain is a Michigan co-partnership, with its principal place of business located at 6241 Ransom Street, Zeeland, MI 49464. The partners of Boersen Farms Grain are Arlan Boersen Farm, LLC, Dennis Boersen Farm, LLC, Ross Boersen Farm, LLC, Arlan Dennis Farm, LLC, Dennis Russell Farm, LLC, Arlan Ross Farm, LLC, and Ross Russell Farm,

LLC, all Michigan limited liability companies. The members of the LLC partners of Boersen Farms Grain are all citizens of the State of Michigan and domiciled in Michigan, as described in Paragraphs 6 through 12 below.

4. Boersen Farms, Inc. is a Michigan corporation, with its principal place of business located at 6241 Ransom Street, Zeeland, MI 49464.

5. Boersen Farms Properties, LLC is a Michigan limited liability company, with its principal place of business located at 6241 Ransom Street, Zeeland, MI 49464. The members of Boersen Farms Properties, LLC are Dennis Boersen and Ross Boersen, both citizens of the State of Michigan and domiciled in Michigan.

6. Arlan Boersen Farm, LLC is a Michigan limited liability company, with its principal place of business located at 6241 Ransom Street, Zeeland, MI 49464. The members of Arlan Boersen Farm, LLC are Arlan Boersen and Sandra Boersen, both citizens of the State of Michigan and domiciled in Michigan.

7. Arlan Dennis Farm, LLC is a Michigan limited liability company, with its principal place of business located at 6241 Ransom Street, Zeeland, MI 49464. The members of Arlan Dennis Farm, LLC are Sandra Boersen and Arlan Boersen, both citizens of the State of Michigan and domiciled in Michigan.

8. Arlan Ross Farm, LLC is a Michigan limited liability company, with its principal place of business located at 6241 Ransom Street, Zeeland, MI 49464. The members of Arlan Ross Farm, LLC are Arlan Boersen, Ross Boersen, Dennis Boersen, Russell Compagner, Sandra Boersen, and Stacy Boersen, all citizens of the State of Michigan and domiciled in Michigan.

9. Dennis Boersen Farm, LLC is a Michigan limited liability company, with its principal place of business located at 6241 Ransom Street, Zeeland, MI 49464. The members of

Dennis Boersen Farm, LLC are Dennis Boersen and Stacy Boersen, both citizens of the State of Michigan and domiciled in Michigan.

10. Ross Boersen Farm, LLC is a Michigan limited liability company, with its principal place of business located at 6241 Ransom Street, Zeeland, MI 49464. The members of Ross Boersen Farm, LLC are Ross Boersen and Russell Companger, both citizens of the State of Michigan and domiciled in Michigan.

11. Ross Russell Farm, LLC is a Michigan limited liability company, with its principal place of business located at 6241 Ransom Street, Zeeland, MI 49464. The members of Ross Russell Farm, LLC are Ross Boersen and Russell Compagner, both citizens of the State of Michigan and domiciled in Michigan.

12. Dennis Russell Farm, LLC is a Michigan limited liability company, with its principal place of business located at 6241 Ransom Street, Zeeland, MI 49464. The sole members of Dennis Russell Farm, LLC are Dennis Boersen and Stacy Boersen, both citizens of the State of Michigan and domiciled in Michigan.

13. Boersen AG Partners, LLC is a Michigan limited liability company, with its principal place of business located at 6241 Ransom Street, Zeeland, MI 49464. The sole member of Boersen AG Partners, LLC is Dennis Boersen, a citizen of the State of Michigan and domiciled in Michigan.

14. Boersen Land Co., LLC is a Michigan limited liability company, with its principal place of business located at 6241 Ransom Street, Zeeland, MI 49464. The sole member of Boersen Land Co., LLC is Dennis Boersen, a citizen of the State of Michigan and domiciled in Michigan.

15. Dennis Boersen is an individual and citizen of the State of Michigan, domiciled in Michigan, with an address of 4878 72nd Avenue, Zeeland, MI 49464.

{02212259 8 }

16. Stacy Boersen is an individual and citizen of the State of Michigan, domiciled in Michigan, with an address of 4878 72nd Avenue, Zeeland, MI 49464.

17. Arlan Boersen is an individual and citizen of the State of Michigan, domiciled in Michigan, with an address of 6241 Ransom Street, Zeeland, MI 49464.

18. Sandra Boersen is an individual and citizen of the State of Michigan, domiciled in Michigan, with an address of 3741 Lakeshore Drive, Shelbyville, MI 49344. She is also the Trustee of the Sandra Boersen Trust.

19. Ross Boersen is an individual and citizen of the State of Michigan, domiciled in Michigan, with an address of 6096 New Holland Street, Hudsonville, MI 49426.

20. Boersen Farms & Affiliates, LLC is a Michigan limited liability company, with its principal place of business located at 6241 Ransom Street, Zeeland, MI 49464. The sole member of Boersen Farms & Affiliates, LLC is Dennis Boersen, a citizen of the State of Michigan and domiciled in Michigan.

21. Boersen Transport, Inc. is a Michigan corporation, with its principal place of business located at 6241 Ransom Street, Zeeland, MI 49464.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction under 28 USC § 1332 because there is complete diversity of citizenship between CHS Capital and the Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs, and under 28 USC § 1367.

23. Venue is proper in this district under 28 USC § 1391(b)(1) and (b)(2).

## COUNT I
## CLAIM AND DELIVERY

24. CHS Capital restates and incorporates by this reference the allegations set forth in paragraphs 1 through 23 above.

{02212259 8 }

25. Each of the Defendants is engaged in the business of farming, principally growing corn and soybean crops in various counties in Western Michigan, and to a lesser extent, Indiana and Ohio.

26. Each of the Defendants (with the exception of Sandra Boersen, as Trustee of the Sandra Boersen Trust, and Boersen Transport, Inc.) executed Security Agreements conveying to CHS Capital a security interest in:

> "(A) All of Grantor's <u>current or future farm products</u> (tangible, intangible and mixed), wherever located, and whether now owned or hereafter acquired, including, without limitation, all of the following assets of Borrower (including if designated as inventory and regardless of whether now owned or hereafter acquired): (i) <u>crops, whether annual or perennial, whether grown, growing or to be grown and whether harvested or unharvested</u>; (ii) <u>grain</u>; (iii) seed; (iv) fertilizer; (v) chemicals; (vi) other supplies owned or used by Borrower in its farming operations; (vii) any negotiable or non-negotiable documents, scale tickets and the like resulting from the storage of any of the foregoing; (viii) accounts, contract rights (including proceeds from insurance policies), instruments, documents and general intangibles; (ix) hedging and commodity accounts and agreements now or hereafter in effect, together with all rights in and to such accounts and agreements and all payments due or to become due thereunder; and (x) to the extent not listed above as original collateral, all Proceeds (whether Cash Proceeds or Noncash Proceeds), Accessions, and substitutes of the foregoing, including, without limitation, the Proceeds of the foregoing and all insurance, eminent domain, and condemnation awards related to any of the foregoing; <u>and (B) all personal property including, without limitation, all of the following property now owned or hereafter acquired</u>, wherever located: (i) Accounts; (ii) <u>Inventory</u>; (iii) <u>Equipment</u>; (iv) Fixtures; (v) all additions, attachments, accessions, parts, replacements, substitutions, products and proceeds of or pertaining to the foregoing (collectively, the "Collateral")." (emphasis added)

Copies of the Security Agreements signed by these Defendants are attached as <u>Exhibit A</u> to Plaintiff's original Complaint (ECF No. 1-1).

27. CHS Capital perfected its security interests in the respective Defendant's farm products and personal property by the UCC financing statements attached as <u>Exhibit B</u> to Plaintiff's original Complaint (ECF No. 1-2).

28. The Collateral secures each of the Defendant's obligations owed CHS Capital.

{02212259 8 }

29. As of August 11, 2017, the Defendants (except Sandra Boersen, as Trustee of the Sandra Boersen Trust, and Boersen Transport, Inc.), as co-obligors or guarantors, jointly and severally owe CHS Capital in excess of $145,327,000.

30. Under each of the Security Agreements attached as Exhibit A to Plaintiff's original Complaint (ECF No. 1-1), following an event of default under the CHS Capital loan documents, CHS Capital is entitled to possession of its Collateral.

31. CHS Capital and the Defendants entered into a December 14, 2016 Forbearance Agreement whereby the Defendants admitted events of default under the CHS Capital loan documents.

32. The December 14, 2016 Forbearance Agreement expired by its terms on December 30, 2016.

33. CHS Capital and the Defendants entered into a May 3, 2017 Forbearance Agreement ("Forbearance Agreement"), whereby the Defendants again admitted events of default under the CHS Capital loan documents, and CHS Capital agreed to forbear from exercising its rights and remedies under the loan documents and at law with respect to specifically enumerated "Existing Defaults" and no others until the earlier of: (a) an event of default under the Forbearance Agreement; or (b) December 31, 2017 (the "Forbearance Period").

34. Before and after the execution of the Forbearance Agreement, one or more of the Defendants planted approximately 25,000 acres of corn, and 58,000 acres of soybeans. The corn crop is situated on approximately 250 parcels in the following counties: Cass, St. Joseph, Van Buren, Branch, Hillsdale, Steuben, LaGrange, Allegan, Barry, Calhoun, Eaton, Ingham, Kalamazoo and Ottawa. The soybean crop is situated on approximately 550 parcels in the following counties: Allegan, Berrien, Cass, St. Joseph, Van Buren, Branch, Calhoun, Hillsdale,

{02212259 8 }

LaGrange, Williams, Barry, Clinton, Eaton, Ingham, Ionia, Jackson, Kalamazoo, Kent, Lenawee, Montcalm, Monroe, Ottawa, Shiawassee, and Washtenaw.

35. A number of material defaults exist under the Forbearance Agreement and loan documents, which defaults constitute an event of default under the Forbearance Agreement. As the result of the Defendants' breach of the Forbearance Agreement, CHS Capital provided the Defendants with the June 6, 2017 Notice and Reservation of Rights letter and August 14, 2017 Notice of Default, Termination, and Exercise of Rights letter attached at Exhibit C to Plaintiff's original Complaint (ECF No. 1-3).

36. As a result of the occurrence of the defaults and the Defendants' failure to comply with the terms and conditions of the Forbearance Agreement and the loan documents, the Forbearance Period terminated and the unsatisfied balance of the obligations owed to CHS Capital is immediately due and payable, and CHS Capital is now entitled to possession of its Collateral, including but not limited to the crop in the ground described in paragraph 34 above, as well as all harvested 2016 crops which remain in the Defendants' possession. Upon information and belief, the remaining 2016 crop is stored at the following locations:

| Site Name | Address | # of Bushels of Corn at Location |
|---|---|---|
| Oetman | 1175 9th Street Plainwell, MI 49080 | 28,019 |
| Stealy, Jr. | 16350 13 Mile Road Battle Creek, MI 49014 | 22,855 |
| Hooper | 1278 2nd Street Plainwell, MI 49080 | 5,541 |
|  | TOTAL | 56,415 |

37. The value of the crop in the ground described in Paragraph 34 is approximately $49,700,000, based on projected yield and market prices, prior to the costs and expenses of cultivating and harvesting the crop.

38. The value of the remaining 2016 corn crop in storage described in Paragraph 36 is approximately $211,000, based on the trading/market prices of the grain.

39. The crop in the ground and stored 2016 crop is divisible property of uniform kind, quality and value.

WHEREFORE, CHS Capital requests that this Court enter an Order in its favor and against the Defendants:

(a) Awarding CHS possession of all of the Collateral described in the security agreements attached at Exhibit A to Plaintiff's original Complaint (ECF No. 1-1).

(b) Restraining Defendants from damaging, destroying, concealing, transferring, selling, or disposing of the Collateral, including but not limited to the crops in the ground described in Paragraph 34 and the harvested crops described in Paragraph 36.

(c) Awarding CHS its attorneys' fees and such other just and equitable relief as determined by this Court.

## COUNT II
## APPOINTMENT OF RECEIVER

40. CHS Capital restates and incorporates by this reference the allegations set forth in Paragraphs 1 through 39 above.

### A. Misrepresentations Regarding Quantity of 2016 Crops

41. Under the terms of the Forbearance Agreement, the Defendants agreed to conduct all farming operations consistent with a budget attached thereto at Schedule D ("Budget").

42. As a result of the transactions summarized in the Notice of Default and Termination of Forbearance Period letter attached as Exhibit C to Plaintiff's original Complaint (ECF No. 1-3) and Paragraphs 47-49 below, the Defendants fraudulently and intentionally misrepresented to CHS Capital the quantity of harvested 2016 grain available for sale, which quantity and resulting expected sale proceeds were included in the Budget. To induce CHS Capital to forbear from

10

{02212259 8 }

exercising its legal right to take possession of the 2016 harvested crops, Defendants fraudulently and intentionally misrepresented the volume of harvested 2016 grain by over $6 million to create the illusion of sufficient revenue to offset expenses. Further, the Defendants failed to comply with the Budget.

### B. Insufficient Working Capital to Harvest 2017 Crops

43.   As a second reason for the appointment of a receiver, CHS Capital states that, due in large part to the Defendants' misrepresentations regarding the volume of 2016 crops available to fund 2017 farming operations, the Defendants have insufficient remaining 2016 crop and crop proceeds to pay the expenses to harvest the 2017 crop. The Defendants ran out of cash in late August, and will have no money to pay for the expenses of harvesting the soybeans in September. See Affidavit of Mark Briden filed with Plaintiff's original Complaint (ECF No. 3).

44.   CHS Capital is not willing to advance funds to the Defendants to pay for the harvest of the 2017 crops. CHS Capital is willing to advance funds to a receiver for such purpose, because CHS Capital will be assured that the monies advanced will be properly used.

### C. Grain Sales in Violation of Security Agreement

45.   As a third reason for the appointment of a receiver, CHS Capital states that Paragraph 4(d) of each of the Security Agreements attached as Exhibit A to Plaintiff's original Complaint (ECF No. 1-1) provides as follows:

> "**Farm Products.** Upon the request of Secured Party, Grantor shall provide to Secured Party the names and addresses of all buyers, commission merchants and selling agents to or through whom Grantor may sell Farm Products and Grantor shall not sell any Farm Products to or through anyone else. Grantor shall supplement the list of potential buyers, commission merchants and selling agents provided to Secured Party whenever necessary or requested by Secured Party. Grantor authorizes Secured Party to notify any and all potential buyers, commission merchants and selling agents named by Grantor of Secured Party's interest in the Farm Products and to take any and all other measures required or allowed by Law to perfect and protect Secured Party's interest in Farm Products. Grantor understands that if Grantor sells any farm products to or through a person that was not identified to Secured Party, Secured Party may assess Grantor a fee in an

amount of the greater of $10,000 or 15% of the sale price of Farm Products, unless (x) Grantor notifies Secured Party in writing at least seven (7) days prior to such sale of the identity of the buyer, commission merchant or selling agent to or through whom such Farm Products are being sold, or (y) unless Grantor accounts to Secured Party for the proceeds of such sale not later than ten (10) days after such sale. Nothing set forth in subsections (x) or (y) shall be construed as relieving the Grantor from complying with the disclosure requirements of this paragraph."

46. Paragraph 4(i) of the Security Agreements attached as Exhibit A to Plaintiff's original Complaint (ECF No. 1-1) states that each Defendant "shall not sell, assign, or transfer any of the Collateral, except to the extent required for transfers of inventory in the ordinary course of business consistent with past business practices . . ."

47. Each of the Defendants is obligated to provide CHS Capital with notice of those third parties to whom each Defendant intends to sell farm products because the loan documents require it. The Federal Food Security Act of 1985 provides that a purchaser who purchases farm products in the ordinary course of its business takes free of CHS Capital's lien unless, prior to such purchase, CHS Capital provides the purchaser with notice of its lien.

48. Contrary to the terms of the Security Agreements, between March 15, 2017 and May 4, 2017, the Borrowers delivered approximately 495,000 bushels of corn constituting CHS Capital's collateral to or for the benefit of BF Funding, LLC, a newly created entity formed to thwart CHS Capital's Food Security Act notices. Proceeds from these grain sales of approximately $1.9 million were not delivered to CHS Capital, in violation of the Security Agreements.

49. Similarly, the Borrowers delivered 594,604 bushels of corn to POET, LLC, an Indiana purchaser outside the normal geographic scope of the Borrower's historical sales of grain, between January 16, 2017 and April 10, 2017, and failed to remit $2,205,654.00 in proceeds from the sales to CHS Capital as required by the Security Agreements.

50. The Borrowers also entered into an agreement with Ed Reed, d/b/a Reed Family Farms and Reed Family Farms, LLC whereby the Borrowers transferred the right to sell and claim

the proceeds of at least 150,000 bushels of CHS Capital's grain collateral (or the value thereof equating to approximately $600,000) to a former landlord in settlement of an unsecured claim for unpaid rent, also in violation of the Security Agreements.

51. Further, the Borrowers have entered into agreements with Kings Cash Group and Strategic Funding Source, Inc. purporting to sell, assign and transfer to such entities all of the Borrowers' interest in accounts receivable constituting CHS Capital's collateral, in violation of the Security Agreements.

52. Prior to the execution of the Forbearance Agreement, on March 28, 2017 Dennis Boersen provided CHS with a written statement to induce CHS Capital to make additional extensions of credit, certifying that no grain was being sold or would be sold where the proceeds from any such sale would be distributed to anyone other than CHS Capital. A copy of the written statement is attached as Exhibit D to Plaintiff's original Complaint (ECF No. 1-4).

53. Despite Dennis Boersen's written assurance to CHS Capital, prior to the execution of the Forbearance Period, one or more of the Defendants engaged in transactions intended to circumvent CHS Capital's notifications to known buyers of farm products throughout Western Michigan. These transactions include:

(a) The sale/shipment of grain to POET, LLC of 594,604 bushels of corn for a total transaction price of $2,205,654.

(b) The sale/shipment of grain to BF Funding, for a total transaction price of approximately $1,900,000.

(c) The sale of grain to Reed and Reed Family Farms, LLC, for a total transaction price of approximately $600,000.

{02212259 8 }

54. Following the Defendants' execution of the Forbearance Agreement, one or more of the Defendants engaged in transactions intended to circumvent CHS Capital's Federal Food Security Act notifications, including but not limited to the following:

   (a) The sale/shipment of 14,089 bushels of corn to Cargill on BF Funding's behalf, for an estimated total transaction price of $50,000.

   (b) The results of physical inventory counts and inspections performed by CHS Capital on June 13, 2017 and August 7, 2017 reveal that approximately 93,620 bushels of grain collateral (valued at approximately $350,000) have been sold or otherwise transferred without disclosure to CHS Capital or remitting proceeds as required under the Forbearance Agreement and the loan documents. The Borrowers have failed or otherwise been unable to provide an accounting, documents responsive to CHS Capital's requests for information or satisfactory explanation with respect to the missing grain collateral.

55. As a result of the transactions described above, the purchasers remitted sale proceeds to one or more of the Defendants, rather than to CHS Capital, and the Defendants did not forward such sale proceeds to CHS Capital, in violation of the Security Agreements.

### D. Actions of Other Creditors Impairing the Value of the 2017 Crops

56. As a fourth basis for the appointment of a receiver, other creditors have obtained court orders that substantially and materially threaten the value of the 2017 crops subject to CHS Capital's security interest. For example, TFG – Michigan L.P. obtained a July 17, 2017 order from the Federal U.S. District Court of Utah – Central Division, that requires the Defendants to remove irrigation equipment, commonly known as "pivots", from the Defendants' fields prior to harvest. Removal of the irrigation equipment must be accomplished in a manner that minimizes damage to the growing crops. The Defendants lack the funds to remove the irrigation equipment, which will result in TFG – Michigan L.P. or its agent removing such irrigation equipment. Such creditor will

have no incentive to minimize damage to CHS Capital's crop collateral. In the alternative, should the Defendants incur such expenses, such expenses will further increase the extent to which 2017 expenses exceed revenue.

57. Other creditors of the Borrowers have obtained money judgments and served writs of garnishment on purchasers of corn and soybeans, jeopardizing CHS Capital's entitlement to proceeds of its collateral. Other secured creditors claiming a superior lien on farming equipment have filed suit to recover such farming equipment, also impairing the Defendants' ability to harvest the 2017 crop.

### E. No equity cushion. Receiver needed to protect collateral.

58. The value of the crops subject to CHS Capital's security interest is less than the indebtedness owed. There is no equity cushion to protect CHS Capital. The appointment of a receiver is necessary to prevent further dissipation of CHS Capital's crop collateral.

59. The Defendants have diverted grain sale proceeds to buy personal real estate.

60. There are multiple secured creditors claiming an interest in farm products. A receivership is needed to provide the opportunity to sell the farm products free and clear of liens, with liens attaching to the sale proceeds in the same rank and priority as attached to the farm products, with all of the sale proceeds going to CHS Capital as senior lienor.

61. The appointment of a receiver is appropriate and necessary to prevent diminishment in the quantity and value of the 2016 farm products and to allow CHS Capital to protect, manage, harvest, and sell the 2017 crops.

62. The receivership estate necessary to accomplish these objectives includes: (a) crops in storage and all cash and non-cash proceeds thereof and the storage facilities relating thereto; (b) crops in the ground and all cash and non-cash proceeds thereof and the Defendants' ownership interests in or possessory rights in the lands where the crops are situated, including but not limited

to real property subject to CHS Capital's mortgagee interests; (c) all livestock and farm equipment of the Defendants, including vehicles in which CHS Capital is listed as a secured creditor (subject to the rights of senior secured creditors with priority over CHS Capital, whose rights will not be impaired by the receivership); and (d) all of the Defendants' business records relating to farming operations.

WHEREFORE, CHS Capital requests that this Court enter an Order appointing a receiver, pursuant to the terms and conditions of the Order accompanying the Motion for Appointment of Receiver filed concurrently herewith.

## COUNT III
## BREACH OF PROMISSORY NOTES

63. CHS Capital restates and incorporates by this reference the allegations set forth in Paragraphs 1 through 62 above.

64. All of the Defendants (except Sandra Boersen, as trustee of the Sandra Boersen Trust, Boersen Transport, Inc. and Boersen Farms & Affiliates, LLC) are co-obligors under the two promissory notes attached as Exhibit E to Plaintiff's original Complaint ("Notes") (ECF No. 1-5).

65. The Defendants liable under the Notes are in default under the terms of the Notes.

66. As a result of the Borrowers' default, CHS Capital is entitled to recovery of the outstanding balance owed under the Notes.

67. As of August 11, 2017, the outstanding payoff balance under the Notes was $145,327,808, plus per diem interest accruing thereafter, subject to adjustment pursuant to the terms of the Forbearance Agreement.

WHEREFORE, Plaintiff requests that this Court enter a money judgment in its favor and against all Defendants (other than Sandra Boersen as trustee of the Sandra Boersen Trust, Boersen Farms & Affiliates, LLC, and Boersen Transport, Inc.) in the amount set forth in Paragraph 67

16

{02212259 8 }

above, together with attorney fees and such other just and equitable relief as determined by this Court.

## COUNT IV
## BREACH OF GUARANTY

68. CHS Capital restates and incorporates by this reference the allegations set forth in Paragraphs 1 through 67 above.

69. Boersen Farms & Affiliates, LLC executed the Guaranty attached as Exhibit F to Plaintiff's original Complaint (ECF No. 1-6).

70. CHS Capital is entitled to immediate payment in full of the indebtedness described in Paragraph 67 above.

71. Boersen Farms & Affiliates, LLC is presently obligated to CHS Capital in the amount of such indebtedness pursuant to the terms of the Guaranty.

WHEREFORE, CHS Capital requests that this Court enter a money judgment in its favor and against Defendant Boersen Farms & Affiliates, LLC in the amount set forth in Paragraph 67 above, together with CHS Capital's attorney fees and such other just and equitable relief as determined by this Court.

## COUNT V
## CONVERSION

72. CHS Capital restates and incorporates by this reference the allegations set forth in Paragraphs 1 through 71 above.

73. On or about February 21, 2017, one or more of the Defendants transferred $204,777.78 of CHS Capital's cash collateral to fund the purchase of a personal residence.

74. The use of such cash collateral for such purpose was wrongful and constitutes a conversion of CHS Capital's cash collateral.

17

{02212259 8 }

WHEREFORE, CHS Capital requests that this Court enter a $204,777.78 money judgment in its favor and against those Defendants participating in the transfer of cash collateral to fund the purchase of the personal residence, impose a constructive trust against the personal residence, and further award CHS Capital its attorneys' fees and such other just and equitable relief as determined by this Court.

## COUNT VI
### STATUTORY CONVERSION UNDER MCL 600.2919(a)(1)

75. CHS Capital restates and incorporates by this reference the allegations set forth in Paragraphs 1 through 74 above.

76. The diversion and use of CHS Capital's $204,777.78 of cash collateral to fund the purchase of a personal residence constitutes a conversion of CHS Capital's cash collateral.

WHEREFORE, CHS Capital requests that this Court enter a money judgment in its favor and against those Defendants participating in the transfer of cash collateral to fund the purchase of a personal residence in the amount of $614,333.34, plus statutory attorneys' fees, to impose a constructive trust against the personal residence, and to award CHS Capital such other just and equitable relief as determined by this Court.

Respectfully submitted,

MIKA MEYERS PLC
Attorneys for Plaintiff

Dated: September 7, 2017        By:    /s/ Ross A. Leisman
                                       Ross A. Leisman (P41923)
                                       900 Monroe Avenue, NW
                                       Grand Rapids, MI 49503
                                       (616) 632-8000

{02212259 8 }

## VERIFICATION STATEMENT

STATE OF MINNESOTA ) 
)ss. 
COUNTY OF Dakota )

Randy Nelson, being first duly sworn, deposes and states:

1. I am employed as a Vice President – Enterprise Credit of CHS Inc., sole member of CHS Capital, LLC.

2. I am familiar with and have personal knowledge of the documents evidencing the Bank's relationship with the Defendants, as more particularly described above.

3. I have reviewed the foregoing Verified Complaint, and as sworn as a witness, can competently testify as to the truth of the facts set forth therein.

Dated: September 7, 2017

Randy Nelson, Vice President – Enterprise Credit
of CHS Inc., Sole Member of CHS Capital, LLC

STATE OF MINNESOTA )
)ss.
COUNTY OF Dakota )

Acknowledged before me in Dakota County, Minnesota, on September 7, 2017, by Randy Nelson, Vice President – Enterprise Credit of CHS Inc., sole member of CHS Capital, LLC.

PARKER JOHN FREIBORG
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2022

_____, Notary Public
Dakota County, Minnesota
My Commission Expires: 1/31/22
Acting in the County of Dakota

{02212259 8 }